Mr. Mobs. Good afternoon, Your Honor. May it please the Court. My name is John Mobs. I represent Gloria Almeida and Irma Quinones. They are nurses who were employed by the Appley Fresenius for more than 20 years each. They were instructed by their supervisor to provide particular patient care which they objected to providing on the basis that they believed they were not qualified under nursing regulations to provide that care and that it would not be safe for the patient. They were terminated less than 60 days later, about 44 days later. The District Court granted summary judgment in this case on two grounds. First, the Court held that New Mexico law applied, not Texas law. And second, the Court held that the nurses could not show that their objection to their employment. They were all ñ Dr. Barbara L. Mobs. Are you talking about the first request for treatment training or the second request? Because there was a second request which seemed less offensive to me as a nurse, that you would go and take that information and you could use it later in life. It wasn't like you had to immediately  Mr. Almeida v. Bio-Medical Applications Well, that is not how the nurses understood the instruction that they were  Dr. Barbara L. Mobs. The second time. Mr. Almeida v. Bio-Medical Applications The second time, right? Dr. Barbara L. Mobs. Yes. Mr. Almeida v. Bio-Medical Applications The first time was the verbal instruction to begin treating the patient. The second time was in the written corrective action to begin treating the patient on a specific date, April 11th. The third time was in the second written corrective action which included instruction to provide home hemodialysis treatment as and when instructed to a patient. The third time did not include a specific date, but the nurses nonetheless understood that the requirement was that they would be required to begin providing the patient the training before they themselves completed the necessary experiential and training  Dr. Barbara L. Mobs. But at that point there was no specific patient. The patient had passed away. This was just going to be the training for a future treatment, right? Mr. Almeida v. Bio-Medical Applications Well, again, that is not how the nurses understood the direction. There is evidence that the patient was no longer a candidate for treatment by the date of the third instruction. There is no evidence that that information was communicated to the nurses, and they understood that this was something that they were going to have to do before obtaining the necessary treatment, not after a course of instruction and training which would qualify them to provide this medical care. Dr. Barbara L. Mobs. I thought the third time was for future training, for training for future... Mr. Almeida v. Bio-Medical Applications Well, that is certainly the position that Fresenius has taken in this case, but, again, that is not how Nurse Almeida and Nurse Quinonez understood the instruction to them. And, in fact, the district court, part of the district court's rationale for granting summary judgment was that this patient was no longer available. Therefore, the district court reasoned the nurses could not have been terminated for refusing to treat this patient. Unfortunately, there is just no real logical, analytical basis for that conclusion. You know, any retaliation case, and this is a retaliation case, is based on past conduct, not future conduct. And so the nurses had in the past, within 45 days, prior to their termination, objected to this instruction. A jury could find that they were terminated for objecting to that instruction, regardless of whether it would have still been possible for them to provide that treatment at some date in the future. And, you know, I think a good analogy might be a sexual harassment claim. You know, an employee might complain of sexual harassment. The employer might terminate the harasser and terminate the employee for complaining of the harassment. The employer can't say, well, you would not have been harassed in the future. That means we didn't terminate you for complaining of the harassment in the first place. That doesn't make sense. And it's the same here. The district court's reasoning that the unavailability of this patient somehow defeated the retaliation claim based on the previous opposition to providing this treatment just doesn't have any logical foundation and has no foundation in the statute. I would like to talk about the choice of law issue, because I think that's an important issue for Texas nurses. Nurse Almeida and Nurse Quinones were licensed in Texas. They were employed in Texas. They objected in Texas to the director from their supervisor, and their employment was terminated in Texas. So, naturally, they sued under Texas statutes. It happens that the particular patient who they were originally directed to provide this treatment to resided in New Mexico. And the district court held that Texas law doesn't apply in that circumstance. New Mexico law applies in that circumstance. What difference would it make? Is the law different? Well, it makes a difference in this case because the nurses sued under Texas statutes. And so if Texas law just doesn't apply, then those Texas statutes don't apply, those Texas anti-retaliation statutes. There is a New Mexico kind of common law retaliatory termination cause of action, but the nurses have not stated that cause of action in their complaint because this conduct all occurred in Texas. The district court's decision was based on the nurse licensure compact, which is multi-state legislation designed to allow nurses to practice in states other than the state in which they reside. They were authorized to practice in New Mexico. They were. They had what's sometimes called compact licenses, permitting them to practice nursing in New Mexico. And there's a section of the nurse licensure compact that says that a nurse practicing in a party state must comply with the state practice laws of the state in which the patient is located at the time care is provided. But it doesn't follow from that that a nurse who's licensed in Texas and is practicing in New Mexico is exempt from Texas nursing regulations or Texas competence requirements when she happens to practice outside of the state. The nurses understood, and even their supervisor understood, that if they practiced across state lines, they were subject to New Mexico nursing regulations and Texas nursing regulations. Everyone, the district court in the briefing gets into all these technical issues about, you know, what you're talking about now, about you're regulated by what state under the nursing rules. Why isn't it just a simple choice-of-law analysis based on the contacts and the facts involved in the case where the termination took place, where they were employed? It is that simple, Judge. I mean, everything happened in Texas. The nurses didn't even provide treatment in New Mexico. So the nurse licensure compact section stating that the law of the state where care is provided applies at the time care is provided has no application because they didn't provide that care. And, you know, going a step further, there's nothing at all in the nurse licensure compact that purports to describe the law applicable to employers of nurses or to state that employers of nurses are somehow immune from the retaliation statutes of their home state when they send nurses across the border to provide treatment in another state. Finally, the nurse licensure compact preserves the jurisdiction of the nurse's home state to take action against the nurse's license in the event of a report of misconduct in the state in which she practices, the foreign state. So there's just no real link between the district court's between the language of the nurse licensure compact relied on by the district court and the district court's decision that Texas law did not apply to the nurse's conduct or, more importantly, I guess, to Fresenius's conduct in this case. Assuming you're right, Texas law applies, what are the fact issues the district court missed when it, because it alternatively ruled that there's no fact issue under the Texas claim? The district court found that there was no evidence of causal relationship between the nurse's complaints or their resistance to providing this treatment and the termination of their employment. In fact, there's a, I think, a very strong evidence of a course of conduct and a series of events that draws a strong logical connection between their objections to providing this treatment and the termination of their employment. Beginning with the verbal instruction in February 23, 2016, to provide this treatment, the nurses right away raised regulatory concerns and patient safety concerns and their supervisor, Nurse Pope, who testified that she understood their concerns and even admired their concerns, told them that if they did not comply, corrective action might follow. So from the beginning there's a threat of discipline to the nurses or employment action against the nurses if they fail to comply with this direction that they, directive that they objected to. And of course they were terminated, as I said, 44 days later. On March 2nd, the nurses did receive that first written corrective action for refusing the verbal instruction and that corrective action cited them for insubordination specifically in their February 23 refusal of the verbal instruction. And it's documented in the nurses' written responses to that corrective action that at the time they were given that corrective action, their supervisor, Nurse Pope, as well as Nancy Roberts, a vice president of the company, gave them an ultimatum. The ultimatum was comply with what Nurse Pope is telling you or resign or be terminated. So there is a second direct threat of termination in response to their protective conduct in objecting to this directive from their supervisor. They submitted written rebuttals. The rebuttals, again, refer to their... But she does give them a couple chances. I mean, I would think someone who really wants to get rid of someone because they objected to a demand wouldn't give them two, you know, first there's this one training opportunity. They don't like that. She gives them a different training opportunity. Well, it was not just training opportunities, though. It was training opportunities tied to the instruction to provide this care before they had the necessary experience to provide this care. And that's the problem. That's the problem. I mean, certainly, Resinius's position is that we didn't terminate the nurses for refusing to provide this treatment. We terminated the nurses for refusing to participate in this course of training, after which they would have had sufficient experience to provide this treatment. And the jury might agree with them at trial. But that's a jury issue. Because the jury could also find, based on this series of events and the repeated citations of the nurses for insubordination, based on their objections to this directive, that they were terminated in retaliation for this directive. And under Texas law, we have a but-for causation standard. But but-for cause is not sole cause under Texas law. And so long as the jury finds that they would have not been terminated when they were, but for this conduct, this protected conduct, or if the protected conduct was a cause of Resinius's employment decision, then it's an illegal decision. And again, as you mentioned, there were a couple of corrective actions, giving the nurses opportunities to participate in training and provide this patient care. And the nurses continually responded in writing, saying, we don't have the experience, this isn't sufficient experience, this endangers the patient, and Participate in the training. They refused. I wasn't trained, so I can't do this. If they're offering you the opportunity to have the training, so that you can do this. But the problem is that the Resinius was not offering training in advance of requiring them to do this. It was offering training as a part of requiring them to do this before they were qualified to do this. I don't think that's the I don't think that was the third corrective action or whatever you're calling. Your Honor, I respectfully disagree. The third corrective, well there was a second written corrective action. The third corrective action is the termination document. The termination document says you're terminated for insubordination in refusing to participate in ongoing training and your written refusal of a previous instruction. That previous written refusal referred to the patient safety and regulatory concerns that they've been raising all along. And their supervisor and their pope testified that she understood these patient safety and regulatory concerns referenced in their written rebuttal to the second corrective action were the same safety and regulatory concerns they've been raising from the beginning and Resinius terminated them based on its own termination document at least in part for their written refusal expressing those concerns. I mean certainly I think any any employer can understand considering an employee to be insubordinate when the employee refuses the employer's instruction. But under Texas law a nurse's evaluation of whether particular treatment is safe or unsafe for a patient a nurse's evaluation of whether particular treatment will be grounds for reporting her to the Texas nursing board is not subordinate to her employer's instructions. Texas law protects from making those decisions. And a jury could reasonably find in this case based on the evidence as a whole and based on the events in which the nurses repeatedly objected and Resinius repeatedly tried to get them to do what they were objecting to that they were terminated for refusing to engage in that conduct. So the summary judgment should be reversed. Does the court have any other questions? Thank you, Mr. Mobs. You saved time for rebuttal. You had only required three minutes for rebuttal but you saved two so we'll give you five on rebuttal if you need it. Thank you, Your Honor. Ms. Bauer? Good afternoon. May I please support? If you refuse to learn and grow with your job then you're refusing to do your job and that's what this case is about. It's undisputed here that it was part of the nurse's job to gain competency in all home therapies Why don't you start with the conflict of law issue? I don't mean to interrupt your train of thought but things in a logical sequence. Tell us which state's law should apply in whom. Well this is an issue of statutory construction in my opinion. The Texas Occupations Code directs us to look to the state where care is to be provided in this case, New Mexico. It's undisputed it was a New Mexico patient. So we have the claimants here asking for the court to award or jury to award significant damages with reference to the underlying standard of care that they claim wasn't met and so at some point we have to be directed to the appropriate standard of care and again the statutory language says in this instance we would look to New Mexico. Now we're not saying that suddenly the nurses weren't you know, subject to the authority of the Texas Board of Nursing or anything like that but the decisions that the appellants have cited in their brief are not on point. What's the statutory language that you think says this had to be the Texas statute doesn't cover this because it involved a New Mexico patient? It's the language that says that when a nurse that a nurse is subject to the law of the state the courts and most importantly the disciplinary, I'm paraphrasing here, but the disciplinary process in the state where the care is to be provided. So it makes no sense. If you're planning to treat a patient in New Mexico, you're going to be looking to, even if you haven't started the care yet, your actions, your guidance, your course of preparation is going to be guided by what standard would apply when you actually provided the care. And the administrative decisions that the appellant cites are not on point. They involve situations where the disciplinary board of another state found there to be misconduct like for example in one case the nurse had DWIs in another state. In the other case the nurse had stipulated to some sanctions in Oklahoma and the Texas Office of Administrative Hearings was trying to assess what it would do in light of those sanctions in the other state. And so there's language, particularly with reference to the case involving the Oklahoma the nurse that had restrictions on a license in Oklahoma the Texas Office of Administrative Hearings was evaluating is this nurse here trying to evade the restrictions that were placed on placed on them in Oklahoma by practicing in Texas. And it's appropriate in that case to look at several factors to determine what if anything the Texas should do to restrict that nurse's ability to practice in the state. And one of the what would Texas law do in this situation but again it was an issue of misconduct and here the question is what is the appropriate standard of care? So it stands to reason that before the Texas Board of Nursing could even take an action here there would have to be some finding that the proposed course of action in New Mexico was somehow inappropriate. Well there just has to be a good faith belief that their objection that they had a good faith belief for thinking they weren't complying. Under the Texas Occupations Code. But what's deficient in the pleadings is that again at some point we have to be looking to what the law requires and what the appropriate standard of care is. There's a reasonableness factor that's embedded in every one of the Texas Occupations Code statutes that's cited if you look at the language. Did you argue it was unreasonable for them to think this was not in violation? Correct. Good faith requires some legal or factual basis for their position and in this case they had no legal basis for Texas law to be the guiding standard of care. If they had gone to New Mexico to experience this training opportunity are they correct that they would have had to immediately try to apply it to a patient or would there be a time frame within which they could complete adequate training? The record here and if I could move on I'd like to discuss what the record shows because there's some confusion here. The nurses were asked and it's undisputed that in that very first February 23rd meeting Kim Pope told them that she would be available on most training days. That's a supervised training. The nurses testified on any given day when they were performing PD as opposed to HHD home demo that they were operating independently not needing guidance from their supervisor doing their own thing. This is an entirely situation. Now their supervisor would be undisputedly available on most training days. This was a supervised training for them to participate in. So this notion, there's a significant difference here. Do you disagree it takes weeks to get trained on that? That's their assertion. This was training. They were to be working with a patient I know that. That's not my question. They assert that it would take, they say at least four weeks to get trained to go work, you know, train that patient on the home treatment in New Mexico. You're saying it wouldn't have taken that long. If I understand the question correctly, there's a period of preliminary coursework and competency exams that was contemplated in the corrective actions. And then That's still not my question. Their argument is we didn't do this because to go provide this service in New Mexico, I think they argue we needed at least four weeks of training. And you seem to be saying, well the nurse just said I'll train you for a few days here. This was training. So you disagree with them that it would take four weeks of training before they could go help the patient? Before they could train under supervision with the patient? I think you're saying, I don't mean to interrupt but are you saying that the work in New Mexico was itself training? Yes. How would anyone ever get experience to do something independently if they don't do it under the supervision of an appropriate professional? That's what this was. The training under the Usually they'd always be supervised there. Correct. And we've pointed out in our briefing that Texas law defines supervision very specifically. And it's with initial instruction from an experienced professional and then periodic inspection afterwards of the act. And in this course their supervisor, Kim Pope, who herself was qualified to conduct this training had said that she would be available on most training days. So this was a supervised training. They were not expected to go out and just work on their own in home chemo. This was part of their training to gain the experience that they needed. This was part of their job. At some point they have to learn and grow with their job. And this was a course of action designed to help them do that. And that's where the complaint doesn't mirror the testimony in reality. Again it's undisputed that Kim said she would be with them most training days. Kim Pope, in her absence appropriate clinical support would be provided from other nurses or remote support that exactly meets if we're looking to Texas law it exactly meets the level of supervision required. But, and here's the big point, Fresenius has its own policy or practice for nurses working in home chemo that it wants them to have three months experience in that modality. But both Texas and federal law, which guides New Mexico law, says that these nurses could have gone out day one and done this on their own. And that's based on their experience in chemo dialysis. These nurses one of them was a certified nephrology nurse. Both had worked in the modality of in-center hemodialysis for years with Fresenius. Now they say their experience wasn't recent enough but they've pointed to no recency requirement. They met the Texas Board of Nursing requirements and CMS requirements and New Mexico follows CMS requirements to be able to do this training. That's why we're saying their position here has no basis in fact or law. You may be entirely right about that, but that's not what the district court ruled based on. You're saying their complaint was unreasonable. They were not asked to do anything improper. They had no basis for thinking it was improper. And maybe you're right about that, but that's not what the district court said, right? And you can defend it on a different point. There's several alternative grounds here to find in Fresenius' favor as the district court did. I think it'd be helpful to look at this train of causation. I mean, just at a very high level. The appellants here, they've focused their entire argument in the complaint on this New Mexico patient and that patient was not available to train as of the date of that second corrective action on March 17th. Did they know that? It's not included in the second corrective action itself. The language of the first corrective action references a patient that they were to begin training in New Mexico on April 11th. Then by the time of the second corrective action, it states participate in trainings as scheduled in the future. So stated differently, there was no patient training scheduled at that time that was imminent. Everything else in that second corrective action had to do with classroom based instruction, which there is no dispute. There's no legal issue with that. The classroom instruction was fine. It also related to competency exams that they needed to take before they could provide care. There was nothing to refuse as of the date of the second corrective action. Everything else that was in that corrective action related to things that don't relate to patient care. They've waived any right to challenge the unavailability of this patient on appeal but the record clearly shows that this patient was unavailable. It's not, sadly this patient did pass away but that's not the reason that the patient was unavailable to train. Ms. Pope testified that the patient had a scheduled surgery and a vacation that had interfered with the planned timing so that patient training was not going to happen. There's also no pretext here because the nurses haven't rebutted each stated reason for the termination decision. The second corrective action had 10 items in it that would refresh their hemodialysis skills and things that the appellants admit would not require a report to the nursing board or jeopardize patient safety in any way. They claim now that they were willing to learn those things but the record doesn't support that. That's an inaccurate assessment of the record. The nurses on that point cite to the rebuttals in which they are in fact refusing to comply with any aspect of the second corrective action. Or they cite to Ms. Quinonez's testimony where she says yes she would have been willing to do the classroom based activities but there's nothing showing that they communicated that to Ms. Pope in the record. In the briefing here that the appellants cited to by extension they've looked to case law interpreting federal employment discrimination laws and without having to decide whether that's appropriate or not I think it's helpful but it's a settled proposition under our federal employment law jurisprudence that in a case like this to show pretext you have to rebut each of the stated reasons for the termination decision and there were 10 items in that second corrective action that formed the basis for the second corrective action and I think it's important to note that the nurses have no patient safety considerations or anything like that no valid excuse for refusing to perform those duties and I'd really like to walk through how this played out because it's confusing and hard to understand but on February 23rd when this patient training was proposed the claimants offered several excuses for not wanting to engage in the training Almeda first stated she didn't want to travel she didn't want to leave the El Paso Clinic she didn't want to be a band-aid for New Mexico's staffing issue, Pope should train the patient herself a traveler nurse should train the patient and she had insufficient experience in HHD similarly Ms. Quinones said that she wasn't willing to travel she doesn't drive on the freeway she didn't want to leave her El Paso patients and she had insufficient training in HHD so just taking a step back at how things stand on February 23rd there's been no mention of Texas law or nursing regulations the nurses have admitted in their depositions and by not referencing it at all in their complaints that the safety of their El Paso patients, who they were normally treated was not an issue appropriate coverage could be provided does the record, I don't mean to interrupt your train of thought, but does the record reflect how many miles of travel Google Maps we may have cited to that in our briefing, but the distance between some of these cities in New Mexico where many of the nurses' peers were having to travel to cover for each other was greater in some instances than what they would have been required to travel to get to Las Cruces, New Mexico and as part of their job they're expected to help provide coverage and so in Ms. Pope's declaration part of their objection is we're going to be asked to do more than everyone else by the time of their second written rebuttal no one does what we do well actually the record shows that they were doing much less work than their peers Ms. Pope had operated as a peer of theirs for many years and then moved into their position as supervisor shortly before this training request came to be and as she states in her declaration and in her deposition testimony that the nurses did not offer, even though they had compact licenses they were not offering to help out in New Mexico and that they had a very low patient workload Kim Pope's deposition testimony also reveals that there were other nurses who were trained in HD, at least one besides herself and so there were nurses performing both types of home therapies and again these patients had a very low patient census the max that they could have was 20 and there's the testimony varies between the two but 5 to 10-ish was the range offered for one of the nurses and the other one said she had a range of about 10 so they definitely had capacity How long was the training period supposed to be? Were they supposed to go there and spend the night and then go back for two weeks or something like that? They, well Ms. Quinonez who had the issue, she said she had an issue traveling on freeways she refused a carpool ride so I'm assuming that it was coming back and forth each day, I think it was about 45 miles But how long was the training period? A week? Three weeks? Two months? I'm not sure exactly how long it would have been but again on any given day they could be asked to cover New Mexico, that's the area, that's part of their job They just travel there and travel back Many people commute such a distance to get to work everyday So as of 2-23 we have no mention of Texas law or Texas regulations Going to the first written rebuttal, the reasons are similar by this point in time Again, Elmita's not willing to travel, my job description doesn't say anything about travel, now they're citing Fresenius's three months experience requirement She again doesn't want to be a band-aid for New Mexico staffing issues and not enough experience in HHD and she doesn't want to be responsible for a patient in another state Quinonez similarly says she doesn't want to drive on the freeway, she doesn't want to leave her clinics and she has insufficient training in HHD So as of the first written rebuttal here, there's still no mention of Texas law or Texas nursing regulations Now they're just making circular arguments, they need to be trained to attend a training, it doesn't make sense There's no dispute that Kim Pope was going to be there again on most training days and that they knew that ever since February 23rd when this was first presented, it was a supervised training How else would you ever get the experience to do something independently So getting to the data, the second written rebuttals Now the excuses are for Almeda that she doesn't want to leave her clinic in El Paso and that it's unrealistic for her to maintain a PD and HHD workload And then she says here at this point, my reasons for not agreeing to your terms as I stated before are those of patient safety, regulatory and legal concerns. Actually this is the first mention of any sort of legal concerns It's unspecified, generic and no reference to Texas law or anything else. It's hard to infer what she means by that. And similarly, Quiñones she says that she prefers PD to HD, she has insufficient training and experience, or excuse me and that she has a concern about patient safety, continuity of care and state regulations unspecified state regulations At this point in time, there's no patient to train This is the first time they've mentioned any sort of legal concern that they have about the training that's been proposed So at this point in total, Almeida has raised 10 concerns that during her deposition she conceded were invalid that she gave to Ms. Pope for not wanting to do this. Similarly, Quiñones raised at least 6 concerns that she's abandoned or admits were invalid now in her depositions We have Kim Pope's declaration testimony where she says that she knew the excuses they were giving her were invalid and she considered it to be a transparent attempt to get out of a work assignment It's clear these nurses, they just didn't want to have anything to do with HHD and they would now have the court conclude that out of this host of admittedly invalid concerns that they gave to their supervisor that she really terminated them because she thought they didn't want to comply with the training, didn't comply with Texas law. It's just not supported by the record. It's pure speculation on their part It's not that forecausation is standard that they need to meet here With no further questions, I'll Thank you, Ms. Bower Mr. Mobs, you've saved time for rebuttal Thank you, Your Honor Let me start at the end with what was communicated to Nurse Pope or what Nurse Pope knew I mean, she testified at page 1095 of the record that she understood Nurse Almeida and Nurse Quinonez's concerns about patient safety and about the requirement of months of experience in the modality and she believed those concerns were stated in good faith So to come in now and say, oh, we just thought this was  that's just inconsistent with her testimony and something that the jury is not required to believe and should not have been a basis for summary judgment A lot of this stuff is just low patient census There's no evidence that these nurses were terminated because of a low patient census or a low workload or that that had anything to do with what happened here There is some disputed evidence about whether or not the nurses would have been required to provide this patient care independently or whether they would have been supervised That's a disputed issue but the nurses understood that this was to be unsupervised training that Ms. Pope said she would be there most days and they understood they would be alone with the patient some days and that that was not safe for the patient Just to get into the regulatory issue a little bit, there are three types or categories of regulations that are at issue both under New Mexico law or under Texas law or federal law which is adopted in New Mexico One is the one we've talked most about which is the requirement of a certain number of months of experience in a specific modality before a nurse is qualified to independently train a patient in that modality Texas requires six months Federal regulations adopted in New Mexico require three months There's questions as to whether the nurses had sufficient hemodialysis experience within the centers and whether that qualified them to provide home hemodialysis training but that's only one of the types of regulations at issue The second type requires nursing competence Texas regulations and New Mexico regulations require nurses to be competent to provide the care that they set out to provide and to use nursing competence in deciding whether to accept or reject an assignment and these nurses testified I think unequivocally that they were not competent to provide the care that they were instructed to provide The third nursing regulation or category of nursing regulations at issue requires not just competence but demonstrated competence, that is nurses are examined and are required to prove their competence in specific modalities of treatment of and the undisputed evidence is that both Nurse Almeida and Nurse Quinones did not take testing on home hemodialysis or even on hemodialysis to demonstrate their competency because they've been instructed by their supervisors in past years not to work in that area so it would have violated regulations requiring demonstrated competencies in home hemodialysis for them to walk in on day one as counsel suggests and start providing this treatment Certainly, maybe the nurses are wrong but certainly they believed in good faith that it would violate regulations for them to provide this care or that it would be grounds for reporting them to the Texas Board of Nursing which is all the statute requires In fact Nurse Popper self testified that these nurses were not qualified to provide home hemodialysis training independently She just disputes whether or not they were instructed to do so independently or whether there would have been supervision So again, those are fact disputes that should go to the jury This is not a case in which the District Court should have resolved these factual disputes themselves but should have allowed a jury to determine them and so the summary judgment should be reversed. Are there any other questions? Alright, thank you. Your case is under submission